# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | Case No. 19-cr-307 (RCL) |
| **WILLIS PIERRE LEWIS,** **BRITTANY JONES,** *and* **DYAMOND SMITH,** | |
| *Defendants.* | |

*As Redacted 7/6/21 Rc̸l*

## MEMORANDUM OPINION

Before the Court are two of defendant Willis Pierre Lewis's pre-trial motions. Lewis first moves to dismiss Counts 1–4 and 12 of the Superseding Indictment under Federal Rules of Criminal Procedure 12(b)(3)(B)(i) & (v), ECF No. 58. He also moves to sever Counts 12, 13, and 15 as improperly and prejudicially joined under Federal Rules of Criminal Procedure 8 and 14, ECF No. 59. The Government opposes both motions. ECF Nos. 67 & 70. Upon consideration of the parties' filings, ECF Nos. 58, 59, 67, 70, the applicable legal standards, and the record herein, the Court will **DENY** Lewis's motion to dismiss, ECF No. 58, and **GRANT IN PART** and **DENY IN PART** Lewis's motion to sever counts, ECF No. 59.

## I. BACKGROUND

In October 2019, a grand jury returned a fifteen-count Superseding Indictment charging defendants Willis Pierre Lewis, Brittany Jones, and Dyamond Smith for their conduct related to, and in furtherance of, a conspiracy to sex traffic two minor girls. ECF No. 23 at 2. Count 1 charges Lewis with sex trafficking a fifteen-year-old girl ("Z.S.") by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), and (b)(1). *Id.* Count 2 charges Lewis with sex trafficking a seventeen-year-old girl ("T.H.Y.") by force, fraud, and coercion, in violation of 18 U.S.C.

§ 1591(a)(1), (a)(2), and (b)(1). *Id.* at 2–3. Counts 3 and 4 charge Lewis and Jones with sex trafficking Z.S. and T.H.Y., in violation of 18 U.S.C. § 1591(a)(1), (a)(2), and (b)(2). *Id.* at 3–4. Count 5 charges all three defendants with conspiring to sex traffic minors, in violation of 18 U.S.C. § 1594(c). *Id.* at 4. Counts 6 and 7 charge Lewis and Jones with transporting minors (Z.S. and T.H.Y.) with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a). *Id.* at 5. Count 8 charges Lewis and Jones with conspiring to transport minors (Z.S. and T.H.Y.) with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(e). *Id.* Counts 9 and 10 charge Lewis and Jones with transportation, in violation of 18 U.S.C. § 2421(a). *Id.* at 6. Count 11 charges Lewis and Jones with interstate travel and transportation in aid of racketeering, in violation of 18 U.S.C. § 1952(a)(3)(A). *Id.* at 6–7. Count 12 charges Lewis with unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 7. Count 13 charges Lewis with attempting to obstruct enforcement of 18 U.S.C. § 1591, in violation of 18 U.S.C. § 1591(d). *Id.* And Count 15 charges Lewis with assault, in violation of D.C. Code § 22-404(a)(1). *Id.* at 8.

As for the dates of the offenses charged, the Superseding Indictment alleges that Counts 1 through 12 occurred "[b]etween on or about April 25, 2019, and May 11, 2019." ECF No. 23 at 2–7. It further alleges that Count 13 (attempting to obstruct the enforcement of § 1591) occurred "[b]etween on or about July 30, 2019, and September 9, 2019." *Id.* at 7. Finally, the Superseding Indictment alleges that Count 15 (assault) occurred "[o]n or about February 1, 2019." *Id.* at 8.

On motion from Lewis, the Court ordered the Government to provide a bill of particulars clarifying the relationship between Count 15 and the other offenses charged in the Superseding Indictment. ECF Nos. 36 & 99. In its bill of particulars, the Government provided the following factual allegations describing the assault charged in Count 15:

> was one of Lewis's co-conspirators. According to
> ██████, on February 1, 2019, Lewis was working at the Crimson
> restaurant on H Street in Washington, D.C. in a security role. Lewis
> brought ████ to the Crimson restaurant to engage in picking up a
> date for commercial sex. When the interaction between ████ and
> the potential customer did not go as Lewis directed, Lewis
> physically assaulted ████ in front of his colleagues at the Crimson
> restaurant.

ECF No. 102 at 2.

To clarify Count 15's relationship to the other charges, the Government added that

> Although this specific assault occurred three months prior to the sex
> trafficking venture related to the other fourteen counts in the
> Superseding Indictment, it is related to the conduct charged in
> [those] Counts because it shows Lewis's control over ████,
> Lewis's role and behavior in relation to the sex trafficking enterprise
> more broadly, and leads to Lewis trafficking Z.S. and T.H.Y. a few
> months later.

*Id.*

Presently before the Court are two of Lewis's pre-trial motions. Lewis first moves to dismiss Counts 1–4 and 12. ECF No. 58. He argues that Counts 1–4 (the sex-trafficking charges) are duplicitous and that Count 12 (unlawful possession of a firearm) fails to state an offense. *Id.* at 2–4. Lewis also moves to sever Count 12 (unlawful possession of a firearm), Count 13 (attempting to obstruct the enforcement of § 1591), and Count 15 (assault). ECF No. 59. He argues that Counts 12, 13, and 15 were improperly joined under Rule 8(a) "because the offenses are not of the same or similar character, are not based on the same transaction, and are not part of a common scheme or plan." *Id.* at 2. He also says that joining Counts 12, 13, and 15 with the other offenses charged in the Superseding Indictment would prejudice him, so the Court should sever those counts under Rule 14. *Id.* at 3–4. The Government opposes both motions. ECF Nos. 67 & 70.

## II. LEGAL STANDARDS

### A. Lewis's Motion to Dismiss

A defendant may raise by pre-trial motion the defense that there is a defect in the indictment. *See* Fed. R. Crim. P. 12(b)(B)(i)–(v). Lewis raises two alleged defects in his motion to dismiss: duplicity and failure to state an offense. *See* ECF No. 58 at 1.

     i.   Duplicity

An indictment is defective if it joins "two or more distinct and separate offenses" in a single count. *United States v. Klat*, 156 F.3d 1258, 1266 (D.C. Cir. 1998); *accord* Fed. R. Crim. P. 12(b)(3)(B)(i). This defect is referred to as "duplicity." Fed. R. Crim. P. 12(b)(3)(B)(i). Duplicity "is unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both." Wayne R. LaFave, et al., *Criminal Procedure*, § 19.3(d) (4th ed. 2015). An indictment is not duplicitous, however, when it alleges alternative means of committing the same offense. *See United States v. Coughlin*, 610 F.3d 89, 107 n.10 (D.C. Cir. 2010) (recognizing that "[t]he correct method of pleading alternative means of committing a single crime is to allege the means in the conjunctive"); *see also* Fed. R. Crim. P. 7(c)(1) (providing that "a count may allege that . . . the defendant committed [an offense] by one or more specified means").

If a defendant raises a valid duplicity defense, this will not result in dismissal of the indictment. LaFave, *supra* § 19.3(d). Instead, "[w]hen presented with a duplicitous count, the proper remedy is for the Court either to give a unanimity instruction or to require the government to elect a theory of prosecution." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 116 (D.D.C. 2012); *see* Wright & Miller, *Federal Practice & Procedure* § 146 (5th ed. 2021).

ii.    Failure to State an Offense

An indictment is also defective if it "fail[s] to state an offense[.]" Fed. R. Crim. P. 12(b)(3)(B)(v). Under Federal Rule of Criminal Procedure 7(c)(1), the indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). To survive a motion to dismiss, an indictment must (1) allege the essential facts constituting the offense, (2) allege each element of the offense so as to provide fair notice to the defendant, and (3) be sufficiently distinct such that a verdict would bar a second prosecution for the same offense. *Sanford, Ltd.*, 859 F. Supp. 2d at 108. When considering a motion to dismiss an indictment, the court is "limited to reviewing the face of the indictment." *United States v. Payne*, 382 F. Supp. 3d 71, 73 (D.D.C. 2019) (quoting *United States v. Hillie*, 289 F. Supp. 3d 188, 193 (D.D.C. 2018)). "The court must presume that the allegations in the indictment are true" and must ask whether those allegations, if proven, "are sufficient to permit a jury to find that the crimes charged were committed." *Id.* (quoting *Sanford, Ltd.*, 859 F. Supp. 2d at 107).

**B. Lewis's Motion to Sever**

Federal Rules of Criminal Procedure 8(b) and 14(a) govern Lewis's motion to sever.

i.    Misjoinder Under Rule 8(b)

An indictment is defective if it improperly joins charges that do not belong in the same pleading. *See* Fed. R. Crim. P. 12(b)(3)(B)(iv). Federal Rule of Criminal Procedure 8 sets forth two standards for joinder, one governing "Joinder of Offenses" and the other governing "Joinder of Defendants." Fed. R. Crim. P. 8. Rule 8 reads:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

**(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8.

Though subsection (a) is titled "Joinder of Offenses," the D.C. Circuit has held that Rule 8(b) governs the joinder of offenses in a multidefendant case. *See, e.g., United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994). For joinder of offenses to be appropriate under Rule 8(b), there must be "a logical relationship between the acts or transactions within the series." *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984). In other words, it is not enough for offenses to be similar in nature (like two burglaries); they must be *related. Id.* For example, joinder of offenses under Rule 8(b) is appropriate when "defendants are charged with conspiracy to conceal a crime that [other defendants] are charged with committing," or when "some defendants are charged with transporting stolen goods in interstate commerce and others are charged with receiving the goods, so stolen and transported." *Id.* (quoting *United States v. Jackson*, 562 F.2d 789, 794–95 (D.C. Cir. 1977)). Notably, the standard for joinder of offenses under Rule 8(b) is more difficult to satisfy than the Rule 8(a) standard. *United States v. Suggs*, 531 F. Supp. 2d 13, 27 (D.D.C. 2008). While two offenses "of the same or similar character" may be joined under Rule 8(a), similarity alone is not enough to justify joinder of offenses in a multidefendant case under Rule 8(b). Fed. R. Crim. P. 8(a).

    ii.   Prejudicial Joinder Under Rule 14(a)

Even if a court finds that offenses were properly joined under Rule 8(b), severance may still be appropriate under Federal Rule of Criminal Procedure 14. That Rule provides that a court "may order separate trials of counts" if it finds that "the joinder of offenses . . . in an indictment

6

. . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A defendant seeking severance under Rule 14 "carries the burden of demonstrating prejudice resulting from a failure to sever." *United States v. Gooch*, 665 F.3d 1318, 1336 (D.C. Cir. 2012).

In *Zafiro v. United States*, the Supreme Court articulated the standard for showing prejudice under Rule 14. 506 U.S. 534 (1993). Recognizing that Rules 8(b) and 14 "are designed 'to promote economy and efficiency and to avoid a multiplicity of trials,'" the Supreme Court held that severance under Rule 14 is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).

Adding further detail to *Zafiro*'s standard, the D.C. Circuit has identified three specific types of prejudice that might occur when a defendant is tried for more than one crime by the same jury: (1) "the jury may cumulate evidence of the separate crimes," (2) "the jury may improperly infer a criminal disposition and treat the inference as evidence of guilt," or (3) "the defendant may become 'embarrassed or confounded' in presenting different defenses to the different charges." *Gooch*, 665 F.3d at 1336 (quoting *Blunt v. United States*, 404 F.2d 1283, 1288 (D.C. Cir. 1968)).

Certain circumstances, however, mitigate these risks. First, the risk that the jury will improperly cumulate evidence or infer criminal disposition when a defendant is tried for multiple crimes is "largely absent" when "evidence of each joined offense[ ] would be admissible in a separate trial for the other." *Blunt*, 404 F.2d at 1288 (quoting *Baker v. United States*, 401 F.2d 958, 971 (D.C. Cir. 1968)). In those cases, "the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials." *Drew v. United States*, 331 F.2d 85, 90 (D.C. Cir. 1964). But "[e]ven where the evidence"

of one crime "would *not* be admissible in [a] separate trial" for another crime, severance is unnecessary if the government can "present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly." *United States v. Daniels*, 770 F.2d 1111, 1117 (D.C. Cir. 1985) (quoting *Drew*, 331 F.2d at 91–92 (emphasis added)). When the evidence supporting separate crimes is "simple and distinct," we presume that the defendant will not be prejudiced by a joint trial because the jury "can easily keep such evidence separate in their deliberations." *Drew*, 331 F.2d at 91.

Ultimately, in each case, the Court "must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." *Drew*, 331 F.2d at 88. "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of district courts." *Zafiro*, 506 U.S. at 541; *accord* Fed. R. Crim. P. 14(a) (providing that if joinder of offenses appears to prejudice a defendant, "the court *may* order separate trial of counts, sever the defendants' trials, or provide any other relief that justice requires") (emphasis added).

With these legal standards in mind, the Court now turns to the merits of Lewis's motions.

### III. DISCUSSION

#### A. The Court Will Deny Lewis's Motion to Dismiss Counts 1–4 and 12

Lewis first moves to dismiss Counts 1–4 and 12 of the Superseding Indictment. *See* ECF No. 58. He argues that Counts 1–4 are duplicitous and that Count 12 fails to state an offense. *Id.* at 2–4. For the reasons explained in the sections that follow, the Court agrees with Lewis that Counts 1–4 are duplicitous. This pleading defect, however, does not warrant dismissal of the Superseding Indictment. And because Count 12 states an offense, Lewis's second argument for dismissal fails entirely.

i.   Counts 1–4 Are Duplicitous

Counts 1 and 2 of the Superseding Indictment charge Lewis with "Sex Trafficking by Force, Fraud, and Coercion" in violation of 18 U.S.C. § 1591(a)(1), (a)(2) & (b)(2). ECF No. 23 at 2–3. Counts 3 and 4 charge Lewis with "Sex Trafficking of Minors" in violation of 18 U.S.C. § 1591(a)(1), (a)(2) & (b)(1). *Id.* at 3–4. Section 1591(a) reads as follows:

> **(a)** Whoever knowingly—
>
> > **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> >
> > **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
> >
> > > knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Lewis argues that Counts 1–4 are all duplicitous because they charge him with violating § 1591(a)(1) *and* § 1591(a)(2), which he says are separate offenses. ECF No. 58 at 3. In response, the Government says that § 1591(a)(1) and § 1591(a)(2) merely provide alternative means of committing a single offense and thus are not duplicitous. ECF No. 70 at 8–9. In other words, the Government apparently believes that § 1591(a) is a single offense, which can be violated by the conduct proscribed in § 1591(a)(1) *or* § 1591(a)(2). *See id.* But that is wrong. Contrary to the Government's interpretation of the statute, § 1591(a)(1) and § 1591(a)(2) are not "alternative means of proving a single offense" but rather codify separate offenses. ECF No. 70 at 7.

To resolve Lewis's duplicity argument, the Court looks to the well-established rule of criminal law that when a statute "list[s] elements in the alternative," it "define[s] multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). For example, say that a statute criminalizes "the lawful or unlawful entry" of a premises with intent to steal. *Id.* One crime (shoplifting) occurs when a person (1) lawfully enters a premises (2) with intent to steal. The second crime (burglary) occurs when a person (1) unlawfully enters a premises (2) with intent to steal. These crimes are distinct, because each crime requires proof of an element that the other does not. Shoplifting hinges on proof that the defendant *lawfully* entered the premises, while burglary hinges on proof that the defendant *unlawfully* entered the premises. So while each offense shares an element (intent to steal), each offense also has an element that the other does not.

That these two offenses are distinct is confirmed by the test that courts apply when determining whether two crimes are really the same offense in the context of double jeopardy. There, two crimes are separate offenses when "each requires proof of a fact that the other does not[.]" *Brown v. Ohio*, 432 U.S. 161, 166 (1977) (quoting *Blockburger v. United States*, 284 U.S. 229, 304 (1932)). Applying this test to the Court's hypothetical statute, we see that the statute contains two distinct crimes, because establishing shoplifting requires proof of lawful entry, an element not contained in burglary. And establishing burglary requires proof of *un*lawful entry, an element not contained in shoplifting.

Having established these basic propositions, we can now see how § 1591(a) unravels into at least two distinct offenses. The first offense, codified at § 1591(a)(1), is the crime of sex trafficking. *See* 18 U.S.C. § 1591(a)(1). The second, codified at § 1591(a)(2), is the crime of benefitting from participating in a venture that engaged in sex trafficking. *See id.* at § 1591(a)(2).

The first offense, "sex trafficking," occurs when a person "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," does so with the requisite *mens rea*, and does so in or affecting interstate commerce.[1] *See* 18 U.S.C. § 1591(a). By contrast, the crime of *"benefitting from participating* in a venture that engaged in sex trafficking," occurs when a person "benefits, financially or by receiving anything of value, from participation ("assisting, supporting, facilitating") in a venture which has engaged in" a sex-trafficking act, does so with the requisite *mens rea*, and does so in or affecting interstate commerce. *See id.*; *id.* at § 1591(e)(4).

---

[1] To satisfy the first element of a § 1591(a)(1) sex-trafficking crime, a person can either recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit by any means a person. *See* 18 U.S.C. § 1591(a). Contrary to the Government's interpretation of the statute, these actions (recruit, entice, etc.) are the various "means" by which the trafficking element of a sex-trafficking crime can be satisfied. *See Mathis*, 136 S. Ct. at 2249 (explaining that "means" are "various factual ways" of "satisfying a single element of a single crime"); *see also* ECF No. 70 at 8 (Government's opposition arguing that § 1591(a)(1) and § 1591(a)(2) are "alternative means" of committing an offense).

One might argue that the Court's interpretation of recruits, entices, harbors, etc. as the "means" by which a defendant may satisfy the trafficking element of a § 1591(a)(1) sex-trafficking crime violates the canon against surplusage. Under that canon of interpretation, courts should, if possible, give effect to every word in a statute. Antonin Scalia & Bryan A. Garner, READING LAW 174. That rule of construction is relevant here because if recruits, entices, harbors, etc. are the exclusive "means" by which the trafficking element can be committed, the "by *any* means" language has no effect. *See* 18 U.S.C. § 1591(a)(1) (emphasis added). The Court's interpretation does not violate this canon for two reasons. First, as the Supreme Court has recognized, "the canon against surplusage, 'assists only where a competing interpretation gives effect to every clause and word of a statute.'" *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013). Here, the Government's competing interpretation of § 1591(a)(1) and § 1591(a)(2) as alternative means of committing the same offense raises the same surplusage issue as the Court's interpretation. The surplusage canon thus does not support the Government's reading. Second, it is possible that Congress used "means" in § 1591(a)(1) as understood in plain language, not as a term of art referring to the "various factual ways" of "satisfying a single element of a single crime." *Mathis*, 136 S. Ct. at 2249. Under that reading, the "by any means" language tells us that the types of actions enumerated in § 1591(a)(1)—recruits, entices, harbors, etc.—can be committed by any method. *See Means*, NEW OXFORD AMERICAN DICTIONARY 1084 (3d ed. 2009) (defining "means" as "an action or system by which a result is brought about; a method"). For example, a defendant could transport a sex-trafficking victim by boat, car, or plane, which are various methods of transporting. This reading gives effect to the "by any means" language, because it reads "by any means" as making crystal clear that the statute reaches every real-world action that amounts to one of the statutorily enumerated means of trafficking.

11

These offenses are two distinct crimes because the government can show the commission of a § 1591(a)(1) sex-trafficking offense *without* showing that the defendant benefitted from a venture that engaged in sex trafficking. For instance, a defendant could knowingly transport a sex-trafficking victim in interstate commerce without receiving anything of value for that conduct. Conversely, the government can show the commission of a § 1591(a)(2) benefitting-by-participating offense *without* showing that the defendant engaged in sex trafficking as defined in § 1591(a)(1). A defendant could benefit financially from *assisting* a venture that engages in sex trafficking, in or affecting interstate commerce, and with the requisite *mens rea*, but without *personally* recruiting, enticing, harboring, etc. a person. For instance, imagine a defendant who, knowing of a sex-trafficking venture, bribes a police officer not to investigate said venture and, for such assistance, receives a kickback from the proceeds of the venture. There, the defendant participated in and benefited from the venture, but never directly recruited, enticed, harbored, etc. a sex-trafficking victim.

Another way to illustrate that these are distinct offenses is by envisioning a simple Venn diagram. In the center of the Venn diagram, where the circles overlap, sits the interstate-commerce element, the requisite *mens rea*, and the person sex-trafficked. But on the wings of the circles, which do not overlap, we would find the elements requisite to a § 1591(a)(1) conviction, but not a § 1591(a)(2) conviction, and vice versa. In other words, in the non-overlapping portion of the § 1591(a)(1) circle, we would find the requirement that the defendant recruited, enticed, harbored, etc. a person. By contrast, in the non-overlapping portion of the § 1591(a)(2) circle, we would find the requirement that the defendant benefitted financially or otherwise in the venture. So because the government could sustain a conviction for a § 1591(a)(1) sex-trafficking offense without proving that the defendant benefitted financially from participating in a sex-trafficking venture,

and vice versa, § 1591(a) proscribes multiple crimes. *See Blockburger*, 284 U.S. at 304; *Mathis*, 136 S. Ct. at 2249.

In fact, the principles the Court just detailed do not end there. Instead, they apply with equal force to the block paragraph in § 1591(a) beginning with "knowing," which sets forth two *mens rea* requirements. *See* 18 U.S.C. § 1591(a). There, the statute provides that a defendant can either know that "means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will cause the person to engage in a commercial sex act" *or* "that the person has not yet attained the age of 18 years and will be caused to engage in a commercial sex act." *Id.* So § 1591(a) actually contains four combinations of elements (i.e., four separate crimes) that a defendant could be convicted of:

### OFFENSE #1

   i)   In or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States;

   ii)   The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person; and

   iii)   Knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act.

### OFFENSE #2

   i)   In or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States;

   ii)   The defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited by any means a person; and

   iii)   Knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the

fact, that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

### OFFENSE #3

    i) In or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States;

    ii) Benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1); and

    iii) Knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act.

### OFFENSE #4

    i) In or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States;

    ii) Benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1); and

    iii) Knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

*See* 18 U.S.C. § 1591(a).

Because § 1591(a) contains multiple crimes, Lewis is correct that Counts 1-4 are duplicitous. By charging him with violating § 1591(a)(1) *and* § 1591(a)(2), the Superseding Indictment joins multiple offenses in the same count. *See* Fed. R. Crim. P. 12(b)(3)(B)(i). This pleading defect, however, does not warrant dismissal of the Superseding Indictment. LaFave, *supra* § 19.3(d). Instead, one appropriate remedy is for the Court to "instruct the jury that it must find unanimously that the defendant was guilty with respect to at least one distinct act." Wright &

Miller, *supra* § 146. Accordingly, to mitigate the risk that the jury will convict Lewis without reaching unanimity on one of the crimes listed in § 1591(a), the Court will provide a unanimity instruction at trial.

### ii. Count 12 Pleads a Violation of 18 U.S.C. § 922(g)(1)

Lewis next argues that the Superseding Indictment should be dismissed because Count 12 fails to plead an offense. ECF No. 58 at 3–4. Count 12 of the Superseding Indictment charges Lewis with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 23 at 7. Section 922(g)(1) makes it "unlawful for any person . . . convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm." 18 U.S.C. § 922(g)(1). The Superseding Indictment alleges the § 922(g)(1) violation as follows:

> Between on or about April 25, 2019, and May 11, 2019, in the District of Columbia and elsewhere, the defendant, **WILLIS PIERRE LEWIS**, knowing he had been convicted of a crime punishable by imprisonment for a term exceeding one year . . . did unlawfully and knowingly possess a firearm, that is, a black handgun, which had been possessed, shipped, and transported in and affecting interstate and foreign commerce.

ECF No. 23 at 7.

Lewis argues that Count 12 should be dismissed because it "does not identify the type of firearm" he allegedly possessed. ECF No. 58 at 2. Instead, he says, it "states a generic description of 'black handgun.'" *Id.* But "[n]o firearm was ever recovered" and Lewis is not alleged to have discharged the gun. *Id.* So Lewis argues that "it is not possible for a jury to determine if the alleged weapon was indeed an operable firearm" or just an "imitation of one." *Id.*

There are two problems with Lewis's argument. First, the Government was not required to allege the type of firearm Lewis allegedly possessed because the type of firearm is not an element

of a § 922(g)(1) violation. Section 922(g)(1) requires only that Lewis possessed "*any* firearm." 18 U.S.C. § 922(g)(1) (emphasis added). It does not distinguish between any particular type of firearm, nor does it require possession of a certain type to establish a violation. *Cf. United States v. O'Brien*, 560 U.S. 218, 227 (2010) (noting that "firearm type is treated as an element" of an offense when the statute "make[s] substantive distinctions between weapons such as pistols and machineguns"); *see* 18 U.S.C. §§ 922(a)(4), (b)(4), (*o*)(1) (making it illegal to possess specific types of firearms, including a machinegun, short-barreled shotgun, or short-barreled rifle). Thus, to give Lewis fair notice of the charge against him, the Government need only allege that Lewis was in possession of a firearm. And that is what it did. *See* ECF No. 23 at 7 (alleging possession of a "firearm, that is, a black handgun").

Second, Lewis's argument that the Superseding Indictment should be dismissed because the jury will be unable to "determine if the alleged weapon was indeed an operable firearm" or simply "an imitation of one" is irrelevant at this posture. ECF No. 58 at 2. When a defendant moves to dismiss an indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), the court is "limited to reviewing the face of the indictment" and must presume that the allegations are true. *Payne*, 382 F. Supp. 3d at 73 (quoting *Hillie*, 289 F. Supp. 3d at 193). Thus, at this stage, the Court must assume that Lewis indeed possessed a black handgun. *See* ECF No. 23 at 7. Whether this is in fact true is an issue for a jury, not one that can be resolved in a motion to dismiss. For these reasons, Lewis's motion to dismiss the Superseding Indictment due to a pleading defect in Count 12 fails.

## B. The Court Will Grant in Part and Deny in Part Lewis's Motion to Sever Counts 12, 13, and 15

Lewis also moves to sever Count 12 (unlawful possession of a firearm), Count 13 (attempting to obstruct the enforcement of § 1591), and Count 15 (assault). ECF No. 59. He argues

that these counts were improperly joined under Rule 8(a) because they are "unrelated," "inapposite," and "separate" from the other crimes charged. *Id.* at 2. Lewis also argues that severance is proper under Rule 14(a) because joining these counts with the others charged in the Superseding Indictment would cause him prejudice. *Id.* For the reasons explained below, the Court holds that Counts 12 and 13 were properly joined under Rule 8(b)[2] and that severance of those counts under Rule 14(a) is unnecessary. Count 15, however, was not properly joined under Rule 8(b) and thus will be severed for a separate trial.

### i. Counts 12 and 13 Were Properly Joined Under Rule 8(b)

As explained above, joinder of offenses in a multidefendant case is proper when the offenses are part of the "same series of acts or transactions." Fed. R. Crim. P. 8(b). Said differently, the "acts or transactions" underlying the offenses charged must share "a logical relationship." *Perry*, 731 F.2d at 990. Here, the conduct alleged in Counts 12 and 13 is part of the same series of acts (i.e., the sex trafficking of Z.S. and T.H.Y.) that gave rise to the other charges in the Superseding Indictment.

First, the charge for unlawfully possessing a firearm under 18 U.S.C. § 922(g)(1) was properly joined with the others because Lewis is alleged to have used a firearm to carry out his sex-trafficking venture. In their statements to law enforcement, both Z.S. and T.H.Y. reported that Lewis "carried a handgun with him in a black backpack that he always had with him." ECF No. 1-1 at 6; *accord id.* at 10. T.H.Y. further explained that Lewis used the gun "to threaten and

---

[2] Both parties assume that Rule 8(a) governs Lewis's claim that Counts 12, 13, and 15 were improperly joined. *See* ECF No. 59 at 1–2; ECF No. 67 at 4. As explained above, however, the D.C. Circuit has held that *Rule 8(b)*, not Rule 8(a), governs the joinder of offenses in a multidefendant case. *See, e.g., Brown*, 16 F.3d at 427. Yet even if Rule 8(a) *did* apply, the outcome today would be the same. The D.C. Circuit's Rule 8(b) test for joinder of offenses in multidefendant cases is more difficult to meet than the standard for joinder of offenses set forth in Rule 8(a). *See Suggs*, 531 F. Supp. 2d at 27. Thus, the Court's holding that joinder of offenses is proper under Rule 8(b) means that joinder would likewise be proper under Rule 8(a).

intimidate" the girls. *Id.* at 12. For example, on one occasion, T.H.Y. woke to find that Lewis had placed the gun under her pillow. *Id.* at 13. Because Lewis allegedly used a gun to maintain control over Z.S. and T.H.Y. during the time he trafficked them, the charge for unlawful possession of a firearm is logically related to the sex-trafficking charges in the Superseding Indictment. Indeed, Counts 1 and 2 allege that Lewis sex trafficked Z.S. and T.H.Y. by, among other means, "threats of force." ECF No. 23 at 2–3. For these reasons, the Court holds that Count 12 was properly joined under Rule 8(b).

Next, the obstruction-of-enforcement charge was properly joined under Rule 8(b) as well. Count 13 alleges that approximately two months after the alleged sex trafficking of Z.S. and T.H.Y. ended, Lewis "attempted to obstruct, interfere with and prevent enforcement of [18 U.S.C. § 1591], which prohibits sex trafficking of minors and sex trafficking by force, fraud, or coercion" in violation of 18 U.S.C. § 1591(d). ECF No. 23 at 7. Lewis's alleged attempt to obstruct enforcement of 18 U.S.C. § 1591—the federal law prohibiting sex trafficking—is unmistakably related to the underlying sex-trafficking charges. In fact, the D.C. Circuit has explicitly recognized that there is a logical relationship between one charge alleging the attempted *concealment* of criminal activity and a second charge alleging the *criminal activity itself. See Perry*, 731 F.2d at 990. Lewis's argument that Count 13 was improperly joined because it occurred months after most of the other charges is thus unpersuasive. *See* ECF No. 59 at 2.

ii.    Severance of Counts 12 and 13 is Not Warranted Under Rule 14

Although the Court finds that joinder of Counts 12 and 13 is proper under Rule 8(b), the inquiry does not end there. *See Zafiro*, 506 U.S. at 539. Under Rule 14(a), severance could still be appropriate if the joinder of offenses causes Lewis prejudice. *See* Fed. R. Crim. P. 14(a) ("If the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts . . . or provide any other relief that justice requires."). As the party

seeking severance, Lewis "carries the burden of demonstrating prejudice resulting from a failure to sever." *Gooch*, 665 F.3d at 1336.

To meet this burden, Lewis argues that joining Count 12 (unlawful possession of a firearm) and Count 13 (attempting to obstruct the enforcement of 18 U.S.C. § 1591) with the other offenses charged in the Superseding Indictment will prejudice him because of the likelihood that a jury will impermissibly cumulate all evidence and infer criminal disposition to find guilt. *Id.* at 4. Because of these risks, Lewis says, he will not have a fair trial on Counts 12 or 13 if they are tried alongside the other charges. *Id.*

Yet given the nature and circumstances of the offenses charged, neither of these risks is as great as Lewis suggests. First, if Lewis were tried separately for attempting to obstruct the enforcement of 18 U.S.C. § 1591, evidence of Lewis's conduct underlying the alleged violation of 18 U.S.C. § 1591(a) would undoubtedly be admissible. The Superseding Indictment alleges that "[b]etween on or about July 30, 2019, and September 9, 2019," Lewis "attempted to obstruct, interfere with, and prevent enforcement of [18 U.S.C. § 1591(d)]." ECF No. 23 at 7. Section 1591(d), in turn, penalizes any person who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section." 18 U.S.C. § 1591(d). To show that Lewis attempted to obstruct the enforcement of 18 U.S.C. § 1591(a), then, the Government must introduce evidence of the underlying violation. Accordingly, "the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials." *Drew*, 331 F.2d at 90.

As for Count 12 (unlawful possession of a firearm), any risk of prejudice from a joint trial is mitigated by the fact that a jury will be able to keep the evidence relevant to the firearm charge separate and distinct from the other offenses. *See Daniels*, 770 F.2d at 1117. To show that Lewis

unlawfully possessed a firearm in violation of 18 U.S.C. § 922(g)(1), the Government must prove beyond a reasonable doubt that (1) Lewis knowingly possessed a firearm; (2) the firearm was transported in interstate commerce; (3) at the time of the possession, Lewis was previously convicted of a felony; and (4) at the time of possession, Lewis knew of his status as a convicted felon. *United States v. Boyd*, 803 F.3d 690, 692 (D.C. Cir. 2015); *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). The evidence required to establish these elements does not overlap with evidence of the other crimes charged. Thus, the Court presumes that a jury can keep the evidence of the firearm charge separate and distinct, which mitigates any prejudice caused by a joint trial. *See Daniels*, 770 F.2d at 1117; *Drew*, 331 F.2d at 91.

For these reasons, the Court will deny Lewis's request to sever Counts 12 and 13 from the other offenses charged in the Superseding Indictment. *See* ECF No. 59.

### iii. Joinder of Count 15 is Improper Under Rule 8(b)

The Court does find, however, that Count 15 was improperly joined under Rule 8(b). Count 15 alleges that approximately two months before Lewis's alleged sex trafficking of Z.S. and T.H.Y. began, Lewis assaulted a woman named ██████████, who later became one of Lewis's co-conspirators in the venture that trafficked Z.S. and T.H.Y. ECF No. 23 at 8; *see* ECF No. 102 at 2. In its bill of particulars, the Government described the conduct giving rise to Count 15 as follows:

> According to ██████, on February 1, 2019, Lewis was working at the Crimson restaurant on H Street in Washington, D.C. in a security role. Lewis brought ██████ to the Crimson restaurant to engage in picking up a date for commercial sex. When the interaction between ██████ and the potential customer did not go as Lewis directed, Lewis physically assaulted ██████ in front of his colleagues.



ECF No. 102 at 3.

To establish a logical relationship between the alleged assault and Lewis's sex trafficking of Z.S. and T.H.Y., the Government argues that this assault was just another instance of Lewis using force to further his sex-trafficking business. *See* ECF No. 67 at 3. As the Government puts it, "the assault that occurred on February 1, 2019 was part of a continuing pattern of abuse and intimidation of ████ by [Lewis]." *Id.* "This was not the first time that [Lewis] physically assaulted ████ – and it would not be the last. [Lewis] used ongoing threats and assaultive behavior to control ████." *Id.* Additionally, the Government says, "both minors witnessed [Lewis] on later occasions continue the assaults of ████ and were aware that if they did not comply with his demands to engage in commercial sex and demonstrate their loyalty to him, they would meet the same fate." *Id.*

The problem with the Government's theory is that the alleged assault has nothing to do with the sex-trafficking venture charged in the Superseding Indictment, which involved the defendants' trafficking of Z.S. and T.H.Y. *See* ECF No. 23 at 1–8. According to the Government, Lewis was apparently trafficking ████—not Z.S. and T.H.Y.—when he assaulted her. *See* ECF No. 102 at 3. Had the Government charged Lewis with trafficking ████ during the time he was trafficking Z.S. and T.H.Y., his assault of ████ would be logically related to the other counts in the Superseding Indictment. But without such allegations, Lewis's use of "assaultive behavior to control ████" while trafficking ████ is merely *similar*—but is not *related*—to his trafficking of Z.S. and T.H.Y. by means of force. *See Perry*, 731 F.2d at 990 (holding that Rule 8(b) cannot be "read to embrace *similar* or even identical offenses, unless those offenses are *related*") (emphases added). Accordingly, Count 15 does not share a logical relationship with the other offenses charged in the Superseding Indictment, which stem from Lewis's sex trafficking of Z.S.

and T.H.Y. *See* ECF No. 23 at 1–8. Joinder is thus improper under Rule 8(b), so the Court will grant Lewis's motion to sever, ECF No. 59, with respect to Count 15.

### IV. CONCLUSION

For the reasons explained above, the Court will **DENY** Lewis's motion to dismiss Counts 1–4 and 12 of the Superseding Indictment, ECF No. 58. It will further **GRANT IN PART** and **DENY IN PART** Lewis's motion to sever Counts 12, 13, and 15 from the other offenses charged in the Superseding Indictment, ECF No. 59. While Counts 12 and 13 were properly joined, Count 15 was not. Accordingly, the Court will **ORDER** that Count 15 be severed from the Superseding Indictment, ECF No. 23, and tried separately.

A separate Order consistent with this Memorandum Opinion shall follow.

Date: June __1__, 2021

Hon. Royce C. Lamberth
United States District Judge